**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-7991 |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | The Honorable Nancy L. Maldonado |
| NORTHERN ILLINOIS UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO**
**DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

   I.   Rape Allegations and Title IX Investigation ............................................... 1

   II.   Drug Use and Student Conduct Allegations ................................................ 3

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................. 5

   I.   Plaintiff's Title IX Claim Fails Because His Allegations Do Not Support an Inference That He Was Discriminated Against Due to Gender. ............................................ 5

   II.   Plaintiff Does Not Plausibly Allege a Due Process Violation. ........................... 9

     A.   Plaintiff Does Not Identify a Protected Interest .............................. 10

     B.   Plaintiff Was Not Denied Due Process ........................................ 12

     C.   Plaintiff Cannot State a Substantive Due Process Claim .................. 13

   III.   Plaintiff's Deprivation of Educational Rights Claim Fails ............................ 14

   IV.   Plaintiff's Declaratory Judgment Claim Is Improper .................................... 14

CONCLUSION ............................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Pages**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................4

*Barnes v. Bd. of Trs. of Univ. of Ill.*,
   946 F.3d 384 (7th Cir. 2020) ........................................................................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................4

*Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*,
   741 F.3d 769 (7th Cir. 2013) ...........................................................10, 11, 13

*Cunningham Bros., Inc. v. Bail*,
   407 F.2d 1165 (7th Cir. 1969) .....................................................................14

*Deveraux v. City of Chicago*,
   14 F.3d 328 (7th Cir. 1994) .........................................................................14

*Doe v. Brown Univ.*,
   166 F. Supp. 3d 177 (D.R.I. 2016) ...............................................................9

*Doe v. Columbia Coll. Chi.*,
   299 F. Supp. 3d 939 (N.D. Ill. 2017) *aff'd*, 933 F.3d 849 (7th Cir. 2019) ...........6, 8

*Doe v. Columbia Coll. Chi.*,
   933 F.3d 849 (7th Cir. 2019) ......................................................................5, 7

*Doe v. Loyola Univ. Chi.*,
   No. 20 CV 7293, 2021 WL 2550063 (N.D. Ill. June 22, 2021)...................7, 8

*Doe v. Purdue Univ.*,
   928 F.3d 652 (7th Cir. 2019) .......................................................................11

*Doe v. Trs. of Ind. Univ.*,
   No. 1:21-cv-00973-JRS-MPB, 2021 WL 2982186 (S.D. Ind. July 15, 2021) .........8

*Doe v. Univ. of Mass.-Amherst*,
   Civil Action No. 14-30143-MGM, 2015 WL 4306521 (D. Mass. July 14,
   2015) ............................................................................................................8

*Doe v. Univ. of Cincinnati*,
   173 F. Supp. 3d 586 (S.D. Ohio 2016) .........................................................8

*Doe v. Washington & Lee Univ.*,
   No. 6:14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015) ...............8

*Doyle v. Camelot Car Ctrs., Inc.*,
    305 F.3d 603 (7th Cir. 2002) ...................................................................................10

*Dupuy v. Samuels*,
    397 F.3d 493 (7th Cir. 2005) ...................................................................................10

*EEOC v. Concentra Health Svcs., Inc.*,
    496 F.3d 773 (7th Cir. 2007) .....................................................................................4

*Gendelman v. Glenbrook N. High Sch.*,
    No. 03 C 3288, 2003 WL 21209880 (N.D. Ill. May 21, 2003) ........................12, 13

*Goss v. Lopez*,
    419 U.S. 565 (1975)..................................................................................................12

*Guerrero v. Howard Bank*,
    No. 20 C 2980, 2022 WL 1211480 (N.D. Ill. Apr. 25, 2022)...................................14

*Haynes v. Ind. Univ.*,
    902 F.3d 724 (7th Cir. 2018) .....................................................................................9

*Hess v. Bd. of Trs. of S. Ill. Univ.*,
    839 F.3d 668 (7th Cir. 2016) ...................................................................................10

*L.M. v. S. Ill. Univ. at Edwardsville (SIUE)*,
    No. 18-cv-1668-NJR-GCS, 2019 WL 5788078 (S.D. Ill. Nov. 6, 2019) ...............11

*Lamb v. Panhandle Cmty. Unit School Dist. No. 2*,
    826 F.2d 526 (7th Cir. 1987) ...................................................................................12

*Malhotra v. Univ. of Ill. at Urbana-Champaign, Through the Bd.*,
    No. 2:21-cv-02220, 2022 WL 3576242 (C.D. Ill. July 19, 2022) ......................10, 11

*Marquez v. Riveredge Hosp., Inc.*,
    No. 21-CV-3369, 2022 WL 832650 (N.D. Ill. Mar. 21, 2022)..........................14, 15

*Martin v. Shawano-Gresham School Dist.*,
    295 F.3d 701 (7th Cir. 2002) ...................................................................................12

*O'Gorman v. City of Chi.*,
    777 F.3d 885 (7th Cir. 2015) ...................................................................................11

*Penland v. Chi. Park Dist.*,
    No. 1:21-cv-05581, 2023 WL 2078459 (N.D. Ill. Feb. 17, 2023)...........................10

*Pugel v. Bd. of Trs. of the Univ. of Ill.*,
    378 F.3d 659 (7th Cir. 2004) ...................................................................................10

*San Antonio Independent School District v. Rodriguez*,
    411 U.S. 1 (1973) ......................................................................................................13

*Sung Park v. Ind. Univ. Sch. of Dentistry*,
    781 F. Supp. 2d 783 (S.D. Ind. 2011) .....................................................................13

*Thompson v. Ortiz*,
    619 F. App'x 542 (7th Cir. 2015) ..........................................................................15

*Washington v. Glucksberg*,
    521 U.S. 702 (U.S. 1997) ........................................................................................13

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ....................................................................................................9

**Statutes**

28 U.S.C. § 2201 ....................................................................................................1, 14

42 U.S.C. § 1983 .........................................................................................................9

Declaratory Judgment Act ...............................................................................14, 15

Defendant, the Board of Trustees of Northern Illinois University ("NIU"), by its undersigned attorneys, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

John Doe was the subject of two investigations while a student at NIU: the first for the alleged rape of Jane Roe and the second for an incident in which he allegedly entered his fraternity, despite being banned from the house as a result of the pending *Roe* investigation, and used cocaine with a female who he then "attempted to put the moves on" and blocked from leaving the room. *See* Complaint ("Compl.") ¶¶1, 46, 79-81, Ex. H. Doe filed the present suit alleging that NIU's sexual assault investigation discriminated against him as a male in violation of Title IX of the Education Amendments of 1972 and that NIU violated his due process rights in its investigation into the incident involving his alleged cocaine use. Plaintiff's Complaint includes four counts: Violation of Title IX (Count I), Violation of Due Process (Count II), Deprivation of Educational Rights (Count III) and Declaratory Judgment pursuant to 28 U.S.C. 2201 (Count IV). Each claim fails as a matter of law for the reasons discussed below and the Complaint should be dismissed in its entirety, with prejudice as a result.

## FACTUAL BACKGROUND[1]

### I.  Rape Allegations and Title IX Investigation

On April 16, 2016, Jane Roe attended a sorority event with a female friend enrolled at NIU. Compl. ¶15. The event was held at a bar in DeKalb, Illinois. *Id*. ¶19. Roe met Doe at the event around 11:30 that evening. *Id*. ¶21. Doe bought Roe a drink and the two consensually kissed, first

---

[1]  As required by Federal Rule of Civil Procedure 12(b)(6), NIU derives the facts stated in this memorandum from Plaintiff's Complaint only for the purposes of this motion and does not address whether they are in fact true.

at the bar and later on the bus back. *Id*. ¶21, 24. After the event, Doe, Roe and two friends went to Doe's room in his fraternity house where they continued drinking. *Id*. ¶25. The two friends left, leaving Doe and Roe alone where they subsequently engaged in sexual intercourse. *Id*. ¶¶26-29. The following morning, Roe recounted her experience with Doe to her friends who stated their belief that Roe had been raped. *Id*. ¶31. Roe initially refused to go to the hospital for a rape kit, but later that day went with her mother to the police station and filed a criminal report. *Id*. ¶33. Roe provided a subsequent statement to police on May 12, 2016. *Id*. ¶34. On May 9, 2016, Doe was interviewed by the police and reported that the sexual intercourse was consensual but that he could not recall many details of the evening due to his drinking. *Id*. ¶36. DeKalb County prosecutors filed criminal charges against Doe on June 23, 2016. *Id*. ¶37.[2]

On April 20, 2016, Sarah Adamski, the Associate Director of Investigations, Affirmative Action and Equity Compliance at NIU attempted to contact Roe about the incident. *Id*. ¶35. Adamski subsequently spoke with Roe on May 5, June 6, and June 30 at which times Roe indicated she did not want to file a Title IX claim. Compl. ¶¶35, 38. Roe subsequently filed a Title IX claim July 1, 2016. *Id*. ¶39. Roe also sent an email to administrators, faculty, alumni and staff at NIU accusing Doe of raping her. *Id*. ¶40. NIU did not publicly refute the claim or inform recipients that the allegations were being investigated. *Id*. ¶42. Adamski conducted a Title IX investigation that included interviewing Doe and asking him to "tell his side of the story." *Id*. ¶44. Doe asserted his Fifth Amendment right and informed Adamski he would not speak about the events in question. *Id*. On August 16, 2016, Adamski completed a Preliminary Title IX report. *Id*. ¶47. Doe responded with a rebuttal concerning unreliable witness statements, the lack of evidence, and inconsistencies in Roe's statements, but was not permitted to cross-examine Roe or any other witnesses at that

---

[2] Doe has since been acquitted of the criminal charges, on or about December 1, 2022.

time. *Id*. ¶¶49, 50. The Office released the Final Report on September 14, 2016, finding that it was more likely than not that Doe sexually assaulted Roe in violation of the University's Title IX policies. *Id*. ¶53, Ex. F. On September 21, 2016, Doe appealed the finding of responsibility. *Id*. ¶53. NIU issued a response and held a sanctions hearing on October 28, 2016. *Id*. ¶¶59, 62.

At the sanctions hearing, NIU presented two witnesses – Roe and Adamski. Compl. ¶¶12, 62. Doe was allowed to submit a list of question for the hearing officer, Bethany Wall, to consider asking Roe, but was not permitted to question her directly or submit follow up questions. *Id*. ¶¶66, 68. Doe submitted 38 questions, 6 of which Wall asked. *Id*. ¶67. Adamski admitted during the hearing that she did not produce all the text messages she reviewed for the preliminary and final reports to Doe. *Id*. ¶69. Adamski further stated that she found Roe credible, despite inconsistent statements to the police. *Id*. ¶71. Wall determined that the proper sanction was expulsion and to ban Doe from campus. *Id*. ¶77. Doe appealed Wall's sanctions and his appeal was denied. *Id*. ¶78.

## II.    Drug Use and Student Conduct Allegations

On September 26, 2016, a staff member reported that Doe, who was banned from his fraternity house during the Title IX investigation, had been in the fraternity using illegal drugs on September 24, 2016. Compl. ¶79. Doe received notice from Jeanne Meyer, Director of Student Conduct, Student Affairs at NIU, informing him that Student Conduct had received a report of alleged policy violations. *Id*. ¶80. The notice outlined three policy violations and requested a meeting with Doe on September 29, 2016. *Id*. Attached to the notice was an incident report summarizing the facts alleged. *Id*. ¶81, Ex. H. The report did not identify by name the fraternity member who reported the incident. *Id*. Doe also received a Notification of Temporary/Interim Sanction informing him that he was temporarily suspended and banned from campus. *Id*. ¶83, Ex. H. Doe filed an administrative appeal the following day which was denied. *Id*. ¶85. As a result,

3

Doe could not attend classes beginning on September 27, 2016. *Id*. On his own initiative, Doe took a drug test that showed no illegal drugs in his system and sent the results to Meyer. *Id*. ¶91.

On September 29, 2016, Doe met with Meyer to discuss the drug allegations. Compl. ¶¶87-88. The meeting was continued to October 5, 2016 for Meyer to continue her investigation. *Id*. ¶89. On October 5, 2016, Meyer informed Doe that it was likely he did not use cocaine on September 24, 2016, but rather that the incident occurred on September 17, 2016. *Id*. ¶¶94-95. Meyer provided the names of Doe's accuser and the name of a witness the accuser allegedly told about the incident. *Id*. ¶95. Meyer did not provide an incident report or written notice regarding the alleged incident on September 17, 2016. *Id*. ¶97. On October 12, 2016, Doe contacted Meyer concerning the status of her investigation but received no response. *Id*. ¶100. On October 14, 2016, still unable to return to class, Doe withdrew from NIU. *Id*. ¶102. On November 4, 2016, Doe received notice that the Student Conduct Policy allegations were dismissed. *Id*. ¶103, Ex. I.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must plead particularized factual content, and not conclusory allegations, which would allow the court to plausibly infer the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim should be dismissed where, accepting as true all well-pled factual allegations, the complaint nevertheless fails to "plausibly suggest that the plaintiff has a right to relief, raising that possibility above 'a speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

# ARGUMENT

## I. Plaintiff's Title IX Claim Fails Because His Allegations Do Not Support an Inference that He Was Discriminated Against Due to Gender.

To state a Title IX discrimination claim, a plaintiff must allege: "(1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019).

Plaintiff asserts that NIU discriminated against him on the basis of gender by "conduct[ing] its investigation of the incident on April 16, 2016 and the subsequent sanctions hearing, in a manner that was biased against Doe due to his gender." Compl. ¶160. In order to plausibly allege gender discrimination, however, "a plaintiff cannot rely on . . . generalized allegations" and needs "particularized facts" from which the court can plausibly infer that a university's "investigation or adjudication was tainted by an anti-male bias." *Id*. at 856. Plaintiff does not allege any specific facts that would support the inference that he was discriminated against because of his gender.

Plaintiff first attempts to create an inference of gender bias by pointing to measures NIU has taken to educate and protect it students from sexual assault. Specifically, Plaintiff points to: (i) NIU's membership in the Pact5, a group of universities around the country who pledge to fight sexual assault on college campuses, (ii) two films NIU submitted to the Pact5 film festival in 2015 dealing with sexual assault, and (iii) NIU's promotion of a Rape Aggression Defense program that offers self-defense programs for women *and men* but, Plaintiff speculates, focused on teaching only men how to deal with and avoid aggressive behavior. Compl. ¶¶106-111. Plaintiff also alleges that "Defendant attempts to tout itself as a safe place for female students." *Id*. at ¶105. Creating a safe place for women and educating students about sexual assault does not amount to anti-male bias. Indeed, the court in *Doe v. Columbia College Chicago*, 299 F. Supp. 3d 939, 955 (N.D. Ill.

2017) *aff'd*, 933 F.3d 849 (7th Cir. 2019) rejected a nearly identical argument that "[e]vents aimed at raising awareness of sexual assault issue[s]," screening films about sexual assault, and school sanctioned social media posts that included statements like, "Teach boys that they are not entitled to women's bodies" and "Misogyny kills: the sexual entitlement that many men have and the ways in which they objectify women are behind the high rates of sexual violence, abuse, and harassment that women experience" evidence gender bias. There, as here, the initiatives Plaintiff described "are not gender-biased and instead are legitimate preventative education programs and resources that OCR has explicitly instructed universities to provide for survivors and victims of all genders." *Id*.

Plaintiff also points to an incident that occurred five years prior in which a former school police officer, Andrew Rifkin, was accused of sexually assaulting a NIU student and NIU was found to have withheld exculpatory evidence that would have exonerated him. Compl. ¶¶112-16. The Rifkin investigation does not evidence gender bias. In fact, Plaintiff never alleges the gender of the student Rifkin allegedly harassed, asking the Court to simply infer that the student was female and any bias towards Rifkin was gender based. If Rifkin's investigation supports any inference of bias, the far more likely inference is of bias against an authority figure accused of raping a student – not a bias against all males in general.

Finally, Plaintiff alleges that NIU's handling of Roe's Title IX investigation evidences an "inherent bias" against him because of his gender. Compl. ¶¶159-60. More specifically, Plaintiff alleges that (i) Adamski demonstrated gender bias by repeatedly contacting Roe and allegedly withholding information that would harm Roe's credibility as a witness, (ii) NIU's failure to publicly refute the allegations in Roe's email to members of the NIU community or publicly explain that the investigation was ongoing is allegedly evidence of gender bias, and (iii) that

Hearing Officer Wall demonstrated gender bias by accepting contradictory statements from Roe and failing to question Adamski's failure to produce all relevant evidence. *Id*. ¶¶161-63.

Courts have repeatedly found similar allegations concerning a university's investigation insufficient to establish male bias absent evidence that a woman accused of sexual assault would have been treated any differently. The Seventh Circuit examined a similar claim in *Doe v. Columbia College*, where the plaintiff alleged that restricting his access to certain documents demonstrated an anti-male bias. 933 F.3d at 856. The court rejected the argument, explaining that such "allegation[s] [are] divorced from gender" where plaintiff "does not allege that females accused of sexual assault were allowed to review materials or that only female victims were allowed to review them." *Id*. The court reached the same conclusion with respect to the plaintiff's claim that the board's decision was against the weight of the evidence, finding that it similarly did not imply that the board's decision was based on Doe's gender. *Id*. (affirming dismissal of plaintiff's Title IX claim, finding "no way to plausibly infer that Columbia's investigation or adjudication was tainted by an anti-male bias").

*Doe v. Loyola University of Chicago*, No. 20 CV 7293, 2021 WL 2550063 (N.D. Ill. June 22, 2021) is similarly analogous and instructive. There, plaintiff pointed to "[the investigator's] slipshod investigation to show the requisite bias," arguing that "the investigation was a predetermined sham because [the investigator] blindly accepted Roe's allegations." *Id*. at *8. The court disagreed, finding that there, like here, plaintiff's complaint about the university's Title IX investigation did not lead to a reasonable inference that the investigation was flawed because of Doe's gender. *Id*. Allegations that the university improperly weighed the evidence in Roe's favor, for example, "do not imply that their decisions were based on Doe's gender." *Id*. The court dismissed plaintiff's claim on the grounds that "Doe's gripes with Loyola's proceedings . . . do not

allege that a woman accused of sexual assault would have been treated any differently than he was." *Id*. at *9. Other courts have reached the same conclusion. *See, e.g.*, *Doe v. Univ. of Mass. - Amherst*, Civil Action No. 14-30143-MGM, 2015 WL 4306521, at *8-9 (D. Mass. July 14, 2015) (even where plaintiff's allegations cast doubt on the accuracy of the university's investigation, plaintiff failed to state a claim for gender discrimination absent any comments showing that he was targeted because of his gender or any conduct indicative of gender bias).

Bias against the accused also does not amount to bias based on sex. *See, e.g.*, *Loyola Univ.-Chi.*, 2021 WL 2550063, at *7 ("[A] pro-victim bias is not sex bias—both women and men can commit or be victims of sexual assault.") (citation omitted); *Columbia Coll. Chi.*, 299 F. Supp. 3d at 955 ("even viewing these allegations in the light most favorable to Plaintiff, they all are indicative, at best, of a bias in favor of sexual assault complainants and against those accused of sexual assault, regardless of gender"); *Doe v. Trs. of Ind. Univ.*, No. 1:21-cv-00973-JRS-MPB, 2021 WL 2982186, at *5 (S.D. Ind. July 15, 2021) ("Doe's complaint amounts to a challenge to a bias in favor of alleged sexual-assault *victims*. Such a bias does not suggest a bias based on *sex*"); *Doe v. University of Cincinnati*, 173 F. Supp. 3d 586, 606 (S.D. Ohio 2016) (rejecting Plaintiff's Title IX claim and finding that "at worst, [the university's] actions were biased in favor of alleged victims of sexual assault").

Courts will allow Title IX claims "where the plaintiff can identify specific facts or comments by university officials that are indicative of gender bias." *Columbia Coll.*, 299 F. Supp. 3d at 954 (collecting cases). For instance, in *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015), the court found that the plaintiff had sufficiently alleged gender bias where one of the officials administering the disciplinary proceeding had recently endorsed an article arguing that sexual assault occurred whenever "a

8

woman has consensual sex with a man and regrets it because she had internal reservations that she did not outwardly express." Likewise, plaintiff's claim survived a motion to dismiss in *Doe v. Brown University*, 166 F. Supp. 3d 177 (D.R.I. 2016) where plaintiff alleged that a university employee said male students were "guilty, until proven innocent" and that the university had "loaded the dice against the boys." *Id.* at 189.

Plaintiff here alleges nothing of the sort. To the contrary, Plaintiff specifically alleges that that he believed administrators at NIU harbored a *personal bias* against him due to his "relationship with his fraternity," which was involved in a hazing incident that resulted in the death of one of its members. Compl. ¶¶10, 14. Plaintiff's complaints about NIU's investigation give no indication of anti-male bias. In the absence of any statements or express acts evidencing gender bias or indicating that a woman in Plaintiff's shoes would have been treated any differently, Plaintiff cannot state a claim for discrimination under Title IX.

## II. Plaintiff Does Not Plausibly Allege a Due Process Violation.

In Count II, Plaintiff alleges that NIU violated his due process rights pursuant to 42 U.S.C. § 1983 in connection with its investigation into his cocaine use and student conduct policy violations. Compl. ¶¶176-87. Specifically, Plaintiff claims that NIU violated his rights by (i) not providing him the names of his accusers, (ii) not providing proper written notice of the September 17, 2016 allegations, (iii) not providing an end date for his suspension, and (iv) suspending him without a hearing. *Id.* ¶¶176-83. Plaintiff's claim fails for several reasons.

As an initial matter, Plaintiff cannot bring a § 1983 claim for damages against the Board of Trustees. "The Board of Trustees, as part of the State, is not a 'person' capable of being sued for damages under § 1983." *Barnes v. Bd. of Trs. of Univ. of Ill.*, 946 F.3d 384, 391 (7th Cir. 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *see also Haynes v. Ind. Univ.*, 902 F.3d 724, 731 (7th Cir. 2018) (finding the argument that "sovereign immunity completely bars

Haynes's action for monetary damages . . . . clearly correct with respect to the University and the Board of Trustees"). Plaintiff's claim for damages fails on that basis alone.

Second, Plaintiff fails to allege the elements of a due process claim. "The Due Process Clause of the Fourteenth Amendment forbids a state to deprive any person of 'life, liberty, or property, without due process of law.'" *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005) (quoting U.S. Const. amend. XIV, § 1). Courts use a two-part analysis for these claims: first, the court determines whether the plaintiff was deprived of a protected interest; second, it determines what process was due under the circumstances. *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016); *Pugel v. Bd. of Trs. of the Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Plaintiff's claim fails because he cannot demonstrate that he was deprived of a protected interest and, even if he could, cannot establish that his right to due process was violated.

A. <u>Plaintiff Does Not Identify a Protected Interest</u>

To bring a due process claim, a plaintiff must establish either a protected property or liberty interest. *Doyle v. Camelot Car Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002). Plaintiff alleges neither and his claim should be dismissed for that reason. *See, e.g.*, *Penland v. Chi. Park Dist.*, No. 1:21-cv-05581, 2023 WL 2078459, at *6 (N.D. Ill. Feb. 17, 2023) (a complaint which leaves defendants and the court "guess[ing] at their claims and legal theories . . . does not satisfy the relatively low bar of notice pleading").

Plaintiff does not have a protected property interest in his continued education. It is well established that college students do not have "a stand-alone property interest in an education at a state university." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013); *Malhotra v. Univ. of Ill. at Urbana-Champaign, Through the Bd.*, No. 2:21-cv-02220, 2022 WL 3576242 at *2 (C.D. Ill. July 19, 2022). To assert a protectable property interest in this context,

10

a student must demonstrate they have "a *legally protected entitlement* to [their] continued education at the university," such as an agreement that the student "would be dismissed only for good cause." *Id.*; *Charleston*, 741 F.3d at 773. To establish that right, "the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* The "student must do more than show that he has a contract with the university; he must establish that the contract entitled him to the specific right that the university allegedly took, such as the right to a continuing education or the right not to be suspended without good cause." *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019) (quotations and citations omitted). Plaintiff's Complaint fails to specify any specific promise that NIU made that would create a protected interest. *See L.M. v. S. Ill. Univ. at Edwardsville (SIUE)*, No. 18-cv-1668-NJR-GCS, 2019 WL 5788078, at *2 (S.D. Ill. Nov. 6, 2019) (Because the complaint failed to specify "the exact promises the university made to the student, and promises the student made in return, L.M. has failed to adequately allege that he was deprived of a property interest.") (quotations omitted); *see also Charleston*, 741 F.3d at 773 (plaintiff's allegation that he was dismissed in violation of the university's policies did not amount to a property interest); *Purdue Univ.*, 928 F.3d at 660 (plaintiff "has not adequately alleged that Purdue deprived him of property because his complaint does not point to any specific contractual promise that Purdue allegedly broke").

Nor does Plaintiff identify any liberty interest at stake. To the extent Plaintiff's claim is impliedly based on an interest in his reputation, the Seventh Circuit has held that "the loss of reputation is not itself a loss of liberty, even when it causes serious impairment of one's future employment." *Purdue Univ.*, 928 F.3d at 662; *see also, O'Gorman v. City of Chi.*, 777 F.3d 885,

891 (7th Cir. 2015). In the absence of a protected property or liberty interest, Plaintiff's procedural due process claim necessarily fails.

B.  Plaintiff Was Not Denied Due Process

Even if Plaintiff could survive the first step of the due process analysis, his claim would still fail because he cannot establish that his right to due process was violated. To satisfy the due process requirements, a student facing temporary suspension must "be given oral or written notice of the charges against him and, if denied, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). A full evidentiary hearing at the time of suspension is not necessary to satisfy due process requirements. *Id.* Rather, the student must be given notice of the charges against him and there must be at least "an informal give-and-take between student and disciplinarian, preferably prior to the suspension . . .." *Id.* at 583-84; *see also Martin v. Shawano-Gresham School Dist.*, 295 F.3d 701, 705-07 (7th Cir. 2002) (due process requirements met where the assistant principal orally informed student of the charges and gave the student an opportunity to tell her side of the story, noting that "the Constitution does not require . . . pre-suspension hearing"); *Lamb v. Panhandle Cmty. Unit School Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987) (due process met where the principal and student informally discussed the incident, the student knew what school rule he was accused of breaking and was given an opportunity to respond); *Gendelman v. Glenbrook N. High Sch.*, No. 03 C 3288, 2003 WL 21209880, at *3 (N.D. Ill. May 21, 2003) (rejecting plaintiffs' argument that due process rights were violated because they were not informed of the specific facts relied upon to support the charges). The Supreme Court has also made clear that "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school." *Goss*, 419 U.S. at 565.

Here, Plaintiff knew about the charges against him and was given an opportunity to discuss the incident with Meyer three days later. Indeed, Plaintiff acknowledges that he received written notice of the charges and a report of the incident. Compl. ¶¶80-81. The report states that Plaintiff – who had been banned from his fraternity as a result of the sexual assault investigation – entered his fraternity with an "unknown female (victim)," they both ingested cocaine, Plaintiff "attempted to put the moves on the victim," and when victim attempted to leave the room, "blocked the door by placing his hands on the door" and standing in front of it. Compl. Ex. H. A preliminary conference regarding the incident was scheduled for three days later on September 29, 2016. *Id*. pp. 2-3; Compl. ¶80. In the meantime, Plaintiff was given the opportunity to request an administrative review of the temporary sanctions, which he took. *Id*. ¶85; Ex. H, p. 8.

C. Plaintiff Cannot State a Substantive Due Process Claim

To the extent Plaintiff's vague references to "due process" are an attempt to allege a substantive due process claim – that claim fails as well. Substantive due process protects against "government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The right to a post-secondary education, however, is not a fundamental right. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 35-37 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Charleston*, 741 F.3d at 774 ("Charleston claims that he has a fundamental right to 'all benefits and privileges of a public higher education.' He has no such thing."). Plaintiff's claim fails as a result. *See Sung Park v. Ind. Univ. Sch. of Dentistry*, 781 F. Supp. 2d 783, 789 (S.D. Ind. 2011) (Because "neither the Supreme Court nor the Seventh Circuit has recognized education, or the right to continued enrollment in a graduate program, as a fundamental right . . . any substantive

13

due process argument that is premised on Park having a fundamental right to education or continued enrollment at IUSD fails as a matter of law.").

## III.     Plaintiff's Deprivation of Educational Rights Claim Fails

In Count III, Plaintiff alleges that NIU deprived him of his right to an education. Defendant is not aware of any authority recognizing "deprivation of educational rights" as a cause of action for a college student in Illinois and Plaintiff provides no explanation of the legal basis for his claim. As discussed above, Plaintiff does not have a fundamental right to a post-secondary education or to continued enrollment at NIU. Nor does he have an independent property or liberty interest. *See supra* II.A-B. Absent any legal right, Plaintiff's claim is not cognizable and does not create a basis for recovery.

## IV.     Plaintiff's Declaratory Judgment Claim Is Improper

Finally, Plaintiff's claim under the Declaratory Judgment Act is improper for several reasons. The Declaratory Judgment Act ("the Act") gives courts the "discretionary power to issue declarations regarding 'the rights and other legal relations of any interested party seeking such declaration.'" *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (citing 28 U.S.C. § 2201). The purpose "is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969). If a "violation or liability is alleged to have already occurred, declaratory relief would serve no purpose." *Guerrero v. Howard Bank*, No. 20 C 2980, 2022 WL 1211480, at *2 (N.D. Ill. Apr. 25, 2022) ("the court is easily persuaded that declaratory judgment is inappropriate in this case" given that the alleged violation already occurred); *see also Marquez v. Riveredge Hosp., Inc.*, No. 21-CV-3369, 2022 WL 832650, at *6 (N.D. Ill. Mar. 21, 2022) (finding that "[t]o the extent that [plaintiff's] request for a declaration . . . relates to events that have already occurred, granting the

14

request would not prevent the accrual of avoidable damages or otherwise clarify the legal relations between the parties").

Plaintiff's request for declaratory relief here does not clarify a legal right at the outset of a dispute as the Act contemplates, but rather seeks a reversal of determinations made years ago. Furthermore, Plaintiff's request is not for a *declaration*, but rather for an order mandating that outcomes and findings made by NIU be reversed, that "Doe's reputation be restored," and that certain records be removed. *See* Compl. ¶192. Those demands for action are not the declaration of "rights and other legal relations" permitted under the Act.

The only true "declaration" that Plaintiff seeks is that NIU's Title IX rules are unconstitutional. *See* Compl. ¶192. As a former student, however, Plaintiff cannot establish that he will suffer any future harm from NIU's allegedly unconstitutional Title IX procedures and lacks standing to seek declaratory relief as a result. *See, e.g., Thompson v. Ortiz*, 619 F. App'x 542, 544 (7th Cir. 2015) ("A plaintiff lacks standing to seek declaratory judgment where a declaration of the parties' legal rights will provide no relief."); *Marquez*, 2022 WL 832650, at *6 (Although [plaintiff] might have been affected by [defendant's] allegedly unlawful admission policy in the past, she has not shown "any continuing, present adverse effects" that would give her standing to pursue the declaration that she seeks.).

## CONCLUSION

For the foregoing reasons, Plaintiff does not state claims upon which relief can be granted. Because no amendments can salvage Plaintiff's claims, NIU requests that this action be dismissed in its entirety with prejudice.

Dated: March 14, 2023

Respectfully submitted,

**THE BOARD OF TRUSTEES OF NORTHERN ILLINOIS UNIVERSITY**

By: /s/ Monica H. Khetarpal
   One of Its Attorneys

Monica H. Khetarpal
Julia S. Wolf
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
Tel.: 312.787.4949
Monica.Khetarpal@jacksonlewis.com
Julia.Wolf@jacksonlewis.com

16

**<u>CERTIFICATE OF SERVICE</u>**

I, Monica H. Khetarpal, an attorney, certify that on March 14, 2023, I caused a true and correct copy of the attached *Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint* to be filed with the Clerk of the Court using the Electronic Filing System, which will send notification of such filing to all counsel of record.

*/s/ Monica H. Khetarpal*
