**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-CV-07991 |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF | ) | Honorable Judge Nancy |
| NORTHERN ILLINOIS UNIVERSITY | ) | Maldonado |
| | ) | |
| Defendant | ) | |
| | ) | |

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 1

    I.    Plaintiff's Time at NIU ............................................................................. 1

    II.   Plaintiff's Title IX Case ........................................................................... 3

    III.   NIU's Failure to Follow Its Procedures ................................................. 7

    IV. Retaliatory Drug Allegations .................................................................. 8

    V.   NIU's Failure to Follow Its Student Conduct Policy ........................... 10

    VI.  Continuing Harm to Plaintiff ................................................................ 11

LEGAL STANDARD ........................................................................................... 11

ARGUMENT ........................................................................................................ 12

    VII.  Plaintiff Has Adequately Stated A Claim That He Was Discriminated Against Due to His Sex ....................................................................................... 12

        a.   Doe sufficiently pleads a Title IX claim under selective enforcement and erroneous outcome theories. ........................................................ 12

        b.   Doe's Background Allegations Form a Backdrop to His Title IX Claims ......... 17

    VIII. Breach of Contract Claim ...................................................................... 18

    IX.   Plaintiff Has Adequately Stated a Claim for Retaliation Under Title IX ........... 18

    X.    Plaintiff's Declaratory Judgment Action Is Not Barred Under The Eleventh Amendment ............................................................................................. 22

CONCLUSION ..................................................................................................... 24

## **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 11

*Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617 (7th Cir. 2020) .................................... 12

*Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690 (7th Cir. 2017)......... 18

*Crowther v. Board of Regents of Univ. System of Georgia*, No. 1:21-CV-04000, 2023 WL

2524453 at *1 (N.D. Georgia, Mar. 15, 2023)........................................................ 21, 23

*Doe v. Columbia Coll. Chicago,* 299 F.Supp3d 939 (N.D. Ill 2017) ............................... 17

*Doe v. Columbia Coll. Chicago*, 933 F.3d 849 (7th Cir. 2019)................................ passim

*Doe v. Cummins*, 662 Fed. Appx. 437 (6th Cir. 2016) ..................................................... 23

*Doe v. Loyola University of Chicago*, 20 CV 7293, 2021 WL 2550063 (N.D. Ill. June 22,

2021) ........................................................................................................................ 14

*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019) ....................................... 13, 15, 17, 23

*Doe v. Univ. of Chicago*, 16 C 08298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017)...... 13

*Ezekiel v. Michel*, 66 F.3d 894 (7th Cir. 1995)................................................................. 12

*Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007)............................................................... 23

*Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167 (2005) ............................................ 19

*Wilkerson v. Univ. of North Texas*, 223 F.Supp.3d 592 (E.D. Tex. 2016) ................. 20, 21

*Yap v. Northwestern Univ.*, 119 F.Supp.3d 841 (N.D. Ill. 2015)..................................... 22

*Yusuf v. Vassar Colleg*e, 35 F.3d 709 (2d Cir.1994) ....................................................... 12

**STATUTES**

34 CFR § 106.71(a)........................................................................................................... 19

**RULES**

Federal Rule of Civil Procedure 12(b)(1) .......................................................................... 11

Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 11

Federal Rule of Civil Procedure 54(c) ............................................................................... 23

Plaintiff, John Doe ("Plaintiff"), by his attorneys Pissetzky Law, LLC, and for his Response in Opposition to The Board of Trustees of Northern Illinois University's ("NIU") Motion to Dismiss Plaintiff's Amended Complaint, respectfully states as follows:

## INTRODUCTION

Plaintiff John Doe was a student at NIU and was enrolled in his final two semesters. He had a bright future waiting for him but just before he was set to graduate, he was falsely accused of sexual assault. Because he was a leader in a male fraternity and the University wanted to crack down on alleged hotbeds of misconduct and punish a supposed ringleader, NIU disregarded Plaintiff's civil rights and its own policies and expelled him from the university. Rather than provide him with the rights he was entitled to, NIU subjected him to a sexual assault proceeding where he was not allowed fair opportunity to defend himself. He was found responsible in an investigation rife with clear procedural and substantive errors. In addition, NIU retaliated against him by bringing a specious investigation unrelated to the sexual assault claims, suspending him without providing him proper notice and an opportunity to resolve the issues. Plaintiff was expelled from NIU due to the results of these one-sided biased and prejudicial proceedings. He lost several weeks of education prior to his expulsion due to the retaliatory conduct and has a permanent black mark on his record despite being found not guilty of sexual assault at a criminal trial.

## FACTUAL BACKGROUND

### I.    Plaintiff's Time at NIU

At the time of the incidents giving rise to this claim, Plaintiff was in his second to last semester at NIU. First Amended Complaint, 1:17-CV-07991, ECF No. 66, ¶ 5 (Am. Compl.) Plaintiff began his academic career at NIU in 2012. *Id.* He joined a fraternity house

1

in 2012. *Id.* In 2012, one of Plaintiff's pledge brothers passed away due to excessive drinking at a hazing event. *Id.* ¶ 10. He was not involved in the planning or execution of the hazing. *Id.* ¶ 11. Like with all fraternities, Doe's fraternity is exclusively male. *Id.* ¶ 12. Sororities are the exclusively female counterpart to fraternities, and both plan and execute similar social events. *Id.* ¶ 13. Plaintiff became president of his fraternity in 2015 and was made to respond to numerous harassing inquiries from Brian Glick ("Glick"), the Associate Director for Student Conduct. *Id.* ¶ 14. He frequently required that Plaintiff come to his office in order to respond to allegations against fraternity members. *Id.* ¶ 15. He would also frequently scrutinize and aggressively punish other fraternities. *Id.* ¶ 16. To Plaintiff's knowledge, no sorority was ever treated this way. *Id.* ¶ 17. These actions demonstrate that Student Affairs had already decided that Plaintiff was a bad actor because he was a male and a fraternity member. *Id.* ¶ 18.

NIU has a recent history of treating men and women accused of sexual misconduct differently. While Doe was on campus, NIU screened the films "Red-Blood Men" and "In Motion," which identified and portrayed males as sexual aggressors whereas women in the films are all victims, and are never portrayed as being capable of sexual misconduct. *Id.* ¶¶ 129-131. In addition, NIU responded to external pressure from the Department of Education's Office of Civil Rights relating to Title IX enforcement at colleges. *Id.* ¶ 139. NIU also promotes the Rape Aggression Defense program, which offers self-defense classes for men and women, but focuses on "learning steps to avoid aggressive behavior" in male classes only, which evinces a presupposition that males are primed to be sexual aggressors. *Id.* ¶ 132.These courses were promoted after a male police officer, Andrew Rifkin, was accused of sexual assault. *Id.* ¶¶ 133-144. He was acquitted of all criminal

charges, and a judge in DeKalb County ruled that NIU's police force intentionally withheld evidence that could have cleared the officer of his sexual assault charges. *Id.* ¶¶ 135-137.

The bias does not only extend to treat men more harshly, but includes treating women accused of sexual assault more leniently. In or around 2017, a female professor, Trude Jacobsen, was accused of sexual misconduct with multiple complaints, including one which was withdrawn due to fear of retaliation. *Id.* ¶¶ 143-144, 146. The alleged victim in that matter initially declined to file a complaint or cooperate in the investigation, and the University did not pursue the matter further. *Id.* ¶ 145. Sarah Adamski, the Associate Director of Investigations, Affirmative Action and Equity Compliance ("AAEC") at NIU handled the initial investigations in the Jacobsen and Doe cases. *Id.* ¶ 150.

## II.     Plaintiff's Title IX Case

Plaintiff's Title IX case arose out of his interactions with Jane Roe. Roe was not an NIU student at all times relevant to this complaint. *Id.* ¶ 21. Roe arrived at NIU to attend a sorority event with one of her friends on April 16, 2016. *Id.* ¶ 20. The event was at O'Leary's Bar in DeKalb, Illinois. *Id.* ¶ 24. Roe and her friend arrived at O'Leary's bar by bus after significant "pre-gaming," which in this case refers to drinking and smoking marijuana prior to a party. *Id.* ¶ 22-24. Roe proceeded to consume more alcohol at the bar, stating at one point that she had consumed about five vodka tonic drinks. *Id.* ¶ 25. Plaintiff had also consumed alcohol that day. *Id.* ¶ 27. They engaged in consensual kissing and rode the bus back to campus. *Id.* ¶¶ 26, 29. Plaintiff, Roe and two mutual friends returned to Plaintiff's fraternity house and drank in Plaintiff's room. *Id.* ¶ 30. Roe's friends left the room, and Plaintiff and Roe continued to consensually kiss and engaged in sexual intercourse. *Id.* ¶¶ 32-34. Roe left the room shortly after the sexual intercourse. *Id.* ¶ 35.

3

When Roe discussed the events of the night with her friends, her friends informed her that they believed she had been raped. *Id.* ¶ 36. Roe did not get a rape kit done at this time but upon returning home later that day, she went with her mother and filed a police report. *Id.* ¶¶ 37-38. The police report claimed that the kissing at O'Leary's was not consensual, that Roe and Plaintiff never kissed in Plaintiff's bedroom at the fraternity house, and that Plaintiff punched Roe and forced himself on her. *Id.* ¶ 38. On May 9, 2016, the police interviewed Plaintiff without an attorney present. *Id.* ¶ 41. Plaintiff stated the sexual intercourse was consensual and could not recall many details of the evening due to his intoxication. *Id.* In a follow-up interview on May 12, 2016, Roe spoke with the police and indicated, contrary to her statements in the initial police report, that the kissing at O'Leary's was consensual, that she consensually kissed Plaintiff on the bus and in his bedroom, and that she consensually straddled Plaintiff and kissed him while he was in his underwear. *Id.* ¶ 39.

Adamski contacted Roe on April 20, 2016 and May 5, 2016 to discuss the alleged incident after being assigned to investigate the allegation. *Id.*, ¶ 40. Roe indicated she did not want to be contacted by Adamski . *Id.* Despite this, Adamski continued to contact Roe again on June 6, 2016 and June 30, 2016 without solicitation. *Id.*, ¶¶ 42-43. On July 1, 2016, Roe filed a Title IX complaint against Plaintiff. *Id.*, ¶ 43. Two weeks after the complaint was filed, NIU instituted interim measures against Plaintiff banning him from all student organizations and participating in extracurricular activities, and removed him from student leadership positions. *Id.*, ¶ 54. On June 23, 2016, DeKalb County prosecutors filed criminal charges against Plaintiff. *Id.* ¶ 44.

While Adamski's investigation was still ongoing and criminal charges had been filed, Roe sent an email to administrators, faculty, alumni, and staff at NIU, accusing Plaintiff of rape and included Plaintiff's full name in this email. *Id.* ¶ 45. NIU took no action to inform the recipients of this email that the allegations were under investigation had not been verified, nor refuted them in any way. *Id.* ¶ 47. Plaintiff was not informed about this email until an NIU employee alerted Doe to its existence. *Id.* ¶ 50.

Plaintiff and his counsel met with Adamski on August 4, 2016. *Id.* ¶ 51. Plaintiff invoked his Fifth Amendment rights because of the pending criminal charges and requested a delay of the Title IX proceedings until his criminal case had been disposed of. *Id.* Adamski felt that the pending criminal case should not delay the investigation even though Plaintiff could not freely participate in the process. *Id.*, ¶¶ 52-53. On August 12, 2016, further interim measures were added banning Plaintiff from residing in a school residence hall or residence building. *Id*, ¶ 56-57. NIU imposed these sanctions to make an example of Plaintiff. ¶ 59.

Adamski provided the Preliminary Title IX report ("Preliminary Report") on August 16, 2016. *Id.* ¶ 60. Adamski included witness statements and adopted Plaintiff's statement given to the police on May 9, 2016, even though this statement was made without an attorney present and Doe declined to adopt this statement when asked by Adamski. *Id.* This report also failed to note that Plaintiff wished to invoke his Fifth Amendment rights. *Id.* ¶ 61. Plaintiff provided a rebuttal to the Preliminary Report pointing out unreliable witness statements, a lack of evidence against him, and the inconsistent statements made by Roe to the police. *Id.* ¶ 62. Plaintiff was not permitted to question Roe or any other

5

witnesses or to verify witness statements before Adamski issued her predetermined Final Title IX Report ("Final Report") on September 14, 2016. *Id.* ¶ 64-65.

The Final Report admitted the inconsistent statements but did not address the reliability of Roe as a witness despite these inconsistencies. *Id.* ¶ 68. In March 2017, Plaintiff discovered that Adamski never met with Roe in person and only had short phone calls and emails with her. *Id.*, ¶ 69. Plaintiff filed his appeal on September 21, 2016, reasserting the inconsistent statements made by Roe. *Id.* ¶ 72. Plaintiff received a response on October 10, 2016, but Glick later claimed on October 14, 2016 that the appeal deadline had passed and that he was permitted to resolve the case as the school's resolution officer, imposing sanctions against Plaintiff that included immediate expulsion and indefinite banishment from NIU property. *Id.* ¶¶ 73-74.

Plaintiff requested a sanctions hearing that took place on October 28, 2016. *Id.* ¶ 75. The hearing was riddled with violations of Plaintiff's rights under Title IX. *Id.* ¶¶ 75-95. The sanctions hearing was heard by Bethany Wall ("Wall") who is not an attorney and has not received any legal training other than that provided by NIU directly. *Id.* ¶¶ 87-89. According to Wall, the hearing was only for sanctions purposes, and she would not be changing Adamski's finding of responsibility. *Id.* ¶ 90. Roe was not required to attend the sanctions hearing in person. *Id.* ¶ 76. NIU was represented by Glick and did not afford Plaintiff the opportunity to question Roe, instead required him to submit a written list of questions, and few were asked of Roe. *Id.* ¶¶ 79-80. Plaintiff was not allowed to provide follow-up questions or build anything resembling a substantive defense. *Id.* ¶¶ 81, 84. Critically, Adamski admitted during the hearing that she did not produce all available or relevant text messages she received from Roe, even though she used those messages when

making a determination against Plaintiff. *Id.* ¶ 82. The text messages were not reviewed by Wall. *Id.* ¶ 94 Without the text messages, Plaintiff did not have the ability to cast doubt on Roe's story except by pointing out inconsistent statements in the police reports, which Glick, Wall and Adamski ignored. *Id.* ¶¶ 77-78, 85, 93. Wall concluded sanctions should be given, including immediate expulsion in part because Plaintiff was allegedly "flippant" during this hearing and Roe was "believable." *Id.* ¶ 92. Plaintiff appealed Wall's sanctions and NIU denied his appeal. *Id.* ¶ 95.

On December 1, 2022, Plaintiff was found not guilty on all criminal charges relating to this incident. *Id.*, ¶ 96.

### III.    NIU's Failure to Follow Its Procedures

NIU's Title IX policy is contained separately from other university disciplinary procedure. *Id.* ¶ 151. The Title IX procedure covers a wide variety of sexual misconduct, including off-campus conduct, conduct relating to extracurricular events, as well as conduct in classes and on-campus. *Id.* ¶ 152-153. The policy contains multiple ways to file a complaint. *Id.* ¶ 154. There is a separate procedure where a police report is filed, police may forward it to a campus Title IX coordinator. *Id.* ¶ 155. A forwarded police report does not constitute an official complaint. *Id.* Even if it is forwarded to a Title IX coordinator, it does not obligate action. *Id.* Continual contact with a potential complainant who does not wish to file a Title IX complaint violates the Title IX policy. *Id.* ¶ 156. Adamski continued to contact Roe about filing the complaint against Plaintiff. *Id.*

In this case, NIU received the initial police report on April 18, 2016. *Id.*, ¶ 159. The Title IX complaint was filed on July 1, 2016. *Id.* When receiving a report of sexual misconduct or a Title IX complaint, NIU assigns an investigator to the case. *Id.* ¶ 158. The

investigation process is fairly expedited in that within a period of five days after the complaint is received, the extent of the investigation is determined. *Id.*, Ex. J. Within two weeks, the investigator is to provide the Respondent with notice of the complaint, and meet with the Claimant, the Respondent and any witnesses identified by either party. *Id.* In the third week, between sixteen and twenty-two days, a preliminary report is issued and provided to the Respondent and Claimant. *Id.* ¶ 158. In this case, the Preliminary Report was not provided until August 16, 2016, well after that deadline. *Id.* ¶ 160. No reason was given for this delay in providing the report. *Id.* ¶ 167.

The Final Report was similarly delayed without explanation. *Id.*, ¶ 161. Under the Title IX policy, the final report is provided to the Respondent and Claimant within thirty-eight to forty days after the initiation of the investigation. *Id.* Here, the Final Report was issued on September 14, 2016, past that deadline. *Id.* ¶ 162. Under the policy, the investigation and sanctions must be completed within sixty days. *Id.* ¶ 165. In this case, the hearing and imposition of sanctions occurred on October 28, 2016, well past sixty days with no written statement or reasoning for any of the severe delays. *Id.* ¶¶ 166-167.

**IV.     Retaliatory Drug Allegations**

In the midst of Plaintiff's Title IX investigation, NIU staff brought additional allegations of drug use against Plaintiff on September 26, 2016, claiming he used drugs in his fraternity house on September 24, 2016. *Id.* ¶ 97-98. Plaintiff was provided written notice of an incident report, but this report contained scant factual detail from third-party sources with no direct connection to the incident, including allegations filtered through several layers of hearsay. *Id.* ¶¶ 99-100. Plaintiff received a notice stating that he was banned from campus and suspended pending an investigation of the allegations. *Id.* ¶101.

He did not have any opportunity to respond to the suspension and banishment, and was not permitted to attend class. *Id.* ¶ 102. He filed an administrative appeal of his suspension, but it was denied with no explanation. *Id.* ¶ 103.

Given that there was very little evidence in the report, the denial appears retaliatory and Plaintiff attempted to gather as much information about the allegation as possible. *Id.* ¶ 105-106. Plaintiff and his counsel met with Jeanne Meyer ("Meyer"), the Director of Student Conduct and Student Affairs, to discuss the allegations on September 29, 2016. *Id.* ¶ 107. Meyer provided the name of one witness but would not provide the name of the individual claiming to have used cocaine with Plaintiff. *Id.* ¶ 108. Doe's suspension was continued until October 5, 2016. *Id.* ¶ 109-110. Plaintiff voluntarily took a drug test that showed no illegal drugs in his system, and he sent this test to Meyer on September 30, 2016, but he remained suspended. *Id.* ¶¶ 111-12. Plaintiff also provided Meyer with the names of witnesses who were with him on the day of the alleged incident. *Id.* ¶ 113.

On October 5, 2016, Plaintiff met with Meyer again, and Meyer admitted it was unlikely that Plaintiff used cocaine on September 24, 2016. *Id.* ¶ 114. Meyer then verbally stated that there was an alleged incident at the fraternity house on September 17, 2016, and Plaintiff was now being accused of using cocaine with a female student. *Id.* ¶ 116. Meyer indicated that Plaintiff's suspension would continue. *Id.* ¶ 117. NIU never produced an incident report or written notice relating to the alleged incident on September 17, 2016. *Id.* ¶ 118. Meyer, without explanation, asserted that Doe's drug test was not sufficient to show he did not use cocaine that day, now stating that a drug test of his hair might persuade her. *Id.* ¶¶ 119-120. Plaintiff's suspension continued into the middle of October 2016, and he had heard nothing and missed multiple weeks of classes by that point. *Id.* ¶ 121. NIU

offered no written notices or resolution options even though they are required to by school policy. *Id.* ¶ 122. As the lack of response made it clear to Plaintiff that Defendant had no intention of treating him fairly, he withdrew from NIU on October 14, 2016 to avoid his academic record being further tarnished. *Id.* ¶ 123-124. On November 4, 2016, he received notice that the allegations of drug use and possession were dismissed. *Id.* ¶ 125.

### V. NIU's Failure to Follow Its Student Conduct Policy

NIU's Title IX sanctions hearings are governed by its Student Conduct Policy. The Student Conduct procedures were adopted for Title IX proceedings. Under the Student Conduct Policy, a student is presumed to be "not responsible" until "proven responsible," and the burden of proof to prove responsibility is on the Claimant. *Id.* ¶¶ 170-171. Adamski's actions show that she presumed Plaintiff to be responsible. *Id.* ¶ 172. She never met with Roe in person, accepted conflicting statements from Roe, and withheld text messages that could harm Roe's credibility. *Id.* The policy provides that no one shall be required to provide information that is self-incriminating, yet Adamski did not consider Plaintiff's assertion of his Fifth Amendment rights and adopted Doe's statement to police that Doe refused to adopt. *Id.* ¶¶ 173-174.

Plaintiff was also presumed responsible in his drug investigation. Plaintiff was not provided written notice for the new allegations against him related to September 17, 2016 despite that being a requirement of the Student Conduct Policy. *Id.* ¶ 180. He then received a suspension without the opportunity to be heard. Meyer's alleged investigation credited unreliable third-party allegations, and she indicated the only solution for Plaintiff to resolve this was to clearly demonstrate he did not use drugs, placing the burden of proof on him and ignoring hard evidence. *Id.* ¶¶ 176-178. A suspension must be for a definite period of

time. *Id.* ¶ 181. Plaintiff, however, was suspended for an unspecified amount of time. *Id.* ¶ 182. An individual must be given a Case Resolution Form, and Plaintiff was not provided a Case Resolution Form for either the initial September 24, 2016 allegations after the initial conference with Meyer, nor for the September 17, 2016 allegations. *Id.* ¶¶ 183-185.

## VI. Continuing Harm to Plaintiff

Plaintiff's education was delayed when he was unable to attend classes from September 24, 2016 through October 14, 2016, and he ultimately withdrew from NIU. *Id.* ¶ 186. He was unable to secure internships, externships, or employment due to these educational delays. *Id.* Due to these delays and being forced to accept a position in a less prestigious online school, Plaintiff has suffered a loss of earning potential which continues to harm him. *Id.* ¶ 187.

## <u>LEGAL STANDARD</u>

NIU brings its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), failure to state a claim upon which relief can be granted. The threshold to survive a Rule 12(b)(6) motion to dismiss is low; a plaintiff need plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). There must be more than "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Twombly*, 550 U.S. at 557. In ruling on a motion to dismiss, the court takes all of Plaintiff's factual allegations as true. *Id.*

NIU also brings its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) as to Count II only. It argues that this Court lacks subject matter jurisdiction as breach of contract is a claim against the state because NIU is a state university. *Def's Memo*

11

*in Support of Mot. To Dismiss,* pp. 15-16. On a motion to dismiss based on 12(b)(1), the burden of proof lies with the party claiming jurisdiction. *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 620 (7th Cir. 2020). All well-pleaded allegations in the complaint are accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

## ARGUMENT

### VII.   Plaintiff Has Adequately Stated A Claim That He Was Discriminated Against Due to His Sex

To state a claim for Title IX discrimination, a plaintiff must allege three elements: (1) the institution in question received federal funding, (2) the plaintiff was excluded from participation or denied the benefits of an educational program, and (3) that the institution discriminated against the plaintiff on the basis of sex. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). Defendant challenges only the third element, and argues that Plaintiff does not plausibly allege that the investigation of Doe was connected to his sex.

Contrary to Defendant's assertions, Defendant has adequately pled facts demonstrating that the investigation against him was biased because he is male, both by identifying a similarly situated female who was treated more favorably, and by alleging that the investigation itself was tainted by anti-male bias.

#### a.   Doe sufficiently pleads a Title IX claim under selective enforcement and erroneous outcome theories.

In *Yusuf v. Vassar Colleg*e, 35 F.3d 709, 715 (2d Cir.1994), the Second Circuit articulated two theories that can be used to show sex bias in the context of university disciplinary proceedings: first, an "erroneous outcome" theory, and second, a "selective enforcement" theory. Under an erroneous outcome theory, "the plaintiff must show that he

12

was innocent and wrongly found to have committed the offense," and that the error was caused by his sex. *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019) (citation and quotation marks omitted). To plead a Title IX claim under a selective enforcement theory, the plaintiff may allege that "regardless of [his] guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender". *Id*. (citation and quotation marks omitted). In examining a selective enforcement claim, courts look to other cases in which a similarly situated person of the opposite sex was treated differently. See, e.g., *Doe v. Univ. of Chicago*, 16 C 08298, 2017 WL 4163960 (N.D. Ill. Sept. 20, 2017). Though the Seventh Circuit has declined to adopt the separate theories from *Yusuf* as distinct doctrinal tests, it held that they could serve as ways of proving the ultimate question—whether "sex was a motivating factor in a university's decision to discipline a student." *Purdue*, 928 F.3d at 667-68. The particular facts alleged regarding the prosecution of Doe's investigation are more than enough to plausibly allege that the investigation, from genesis to conclusion, was motivated by Doe's sex.

### i. *Defendant's non-investigation of Trude Jacobsen demonstrates anti-male bias.*

The allegations regarding Defendant's investigation of Trude Jacobsen amount to a plausible allegation that, were Doe female, the investigation against him either would not have commenced, or would have been dropped. The two cases are similar in every germane respect. Both were accused of sexual misconduct, specifically in the form of a forced or coerced sexual encounter, against a victim of the opposite sex. Am. Compl. ¶¶ 36-43, ¶¶ 143-147. In both cases, the alleged victim, reported to the same NIU employee, Sarah Adamski, that they did not wish to pursue an investigation. *Id.* ¶¶ 40, 150. However, in Jacobsen's case, Adamski simply dropped the investigation, and Jacobsen suffered no

13

repercussion whatsoever. In Doe's case, on the other hand, Adamski made repeated, unsolicited calls to the alleged victim to convince her and pressure her to pursue the investigation[1].

The *only* salient difference in the two cases is that Jacobsen is female, and Doe is male. For all purposes, Jacobsen is an appropriate female comparator to Doe. These allegations are, on their own, sufficient to allow Doe to plausibly allege that, were he a woman like Jacobsen, the investigation he was subjected to would not have occurred. Given this selective and arbitrary enforcement of Defendant's discipline procedures, Doe's allegation that, regardless of his guilt or innocence, he was prosecuted aggressively because he was male, and Jacobsen was not because she is female, rises well out of the speculative and well into the plausible. These allegations also demonstrate that Defendant's bias is not simply pro-victim, but affirmatively anti-male.

Notably, Defendant cites *Doe v. Loyola University of Chicago*, 20 CV 7293, 2021 WL 2550063 (N.D. Ill. June 22, 2021), for the proposition that, where a plaintiff does not "allege that a woman accused of sexual assault would have been treated any differently than he was," then the allegations are "divorced from gender" and cannot support a Title IX claim. However, this is *precisely* what Doe alleges by pointing to the investigation of Jacobsen.

_____

[1] If anything, Adamski should have been more aggressive in pursuing the allegations against Jacobsen. The allegations were reported by two separate complainants, bolstering their credibility. Further, the complainants only declined to pursue after being threatened by Jacobsen. This threat should have caused Adamski to further prosecute Jacobsen for retaliation and intimidation in addition to the underlying misconduct, but instead she simply dropped the investigation.

The allegations regarding Andrew Rifkin further bolster this allegation because they serve to highlight the stark difference in how Defendant handles allegations against males and females. *Id*. ¶¶ 134-138.

### ii. *The facts of Doe's investigation demonstrate anti-male bias.*

Though Doe's allegations above suffice on their own to plausibly allege sex discrimination, the allegations regarding his investigation specifically serve as an independent basis to plausibly allege anti-male bias under an erroneous outcome theory. Under this theory, a plaintiff must allege (1) that the school arrived at an erroneous outcome in the investigation, and (2) did so because it was biased against Plaintiff because of his sex. *Purdue*, 928 F.3d at 667.

The first element, an erroneous outcome, is met easily here. The investigation was rife with procedural and substantive errors and omissions that cast the outcome of the investigation into serious doubt. First, Defendant took no steps at all to rectify, clarify, or address in any way an email sent to the school's faculty and staff by Roe. Am. Compl. ¶ 45. In this email, Roe accuses Doe by name of being a rapist, and paints him as a stereotypical male aggressor Am. Compl. Ex. D, pp.89-90. Roe accused him of slapping, laughing at, humiliating, and raping her, and speculates that he spends his time at frat parties bragging to his friends about getting away with it. *Id.* The email paints a ghoulish caricature of toxic masculinity and is rife with specifically anti-male language. *Id*. Defendant knew of this highly prejudicial and defamatory email and did nothing about it, thereby giving its tacit stamp of approval. *Id.* ¶ 47. By giving its approval, it was evincing not only a pro-victim bias, but specifically an anti-male bias.

Additionally, against its rules, the school refused to delay the proceedings to allow the pending criminal charges to be resolved, effectively forcing Doe to make the choice

between giving up his Fifth Amendment rights, or remaining silent and not being able to fully and effectively participate during the course of the investigation. *Id*. ¶ 51. They levied punitive measures against him that presumed his guilt, banning him from campus and effectively evicting him from his fraternity house. *Id*. ¶¶ 54-57.

Defendant adopted Doe's statement to police, despite his refusal to adopt the statement. *Id*. ¶ 60 Defendant credited one of Roe's inconsistent statements to police, and not the other, making no attempt to resolve or address the inconsistencies. *Id*. ¶ 68. At a sanctions hearing, Defendant refused to allow Doe to cross-examine Roe, and asked Roe only six (6) of thirty-eight (38) questions that Doe submitted. *Id*. ¶¶ 79-80, In the course of its investigation, Defendant withheld from Doe relevant and material evidence that, among other things, further deprived Doe of the opportunity to call Roe's reliability as a witness into question. *Id*. ¶¶ 82-84.

These allegations, when taken together with the allegations regarding Defendant's treatment of Doe prior to the investigation, give rise to the plausible inference that the manifest deficiencies in the proceedings were caused by Doe's sex. Doe was a member and president of a fraternity, an exclusively male organization. *Id*. ¶¶ 12, 14. In that capacity, he was consistently harassed and subjected to baseless scrutiny regarding the goings-on of the fraternity and suffered baseless accusations of wrong-doing leveled against him and his fraternity brothers. *Id*. ¶¶ 14-15.Other fraternities and fraternity presidents were subjected to the same harassment and scrutiny. *Id*. at ¶ 16. By contrast, no NIU sorority was subjected to the same sort of scrutiny *Id*. at ¶ 17.

This background permits the inference that Defendant harbored a bias against fraternities in general, and against Plaintiff because of his membership and participation in

fraternity life. The school demonstrated that it wanted to make examples of fraternities and their members. This bias is inextricably tied to Doe's sex. Further, this investigation, and its manifest errors in substance and procedure, are plausibly alleged as connected to, and extensions of, this previously exhibited bias.

### b. Doe's Background Allegations Form a Backdrop to His Title IX Claims.

Background allegations establishing a school's general bias against male students accused of sexual assault are relevant to a Title IX claim, even if the allegations on their own are not sufficient to support a claim as to a particular student. *Columbia Coll. Chicago*, 933 F.3d at 855. These relevant background allegations can include allegations that the Defendant screened films, held events, or made social media posts that depict men as sexually aggressive, ignore or minimize male victimization. *Id*. Critically, Defendant misrepresents *Columbia Coll. Chicago* as holding that these events are, as a matter of law, not relevant to this sort of case because they are not gender biased. In reality, the district court in that case held that the public awareness events were not *per se* gender biased (*Doe v. Columbia Coll. Chicago,* 299 F.Supp3d 939, 955 (N.D. Ill 2017)), but the Court of Appeals decision held that these allegations were relevant to a Title IX claim, and when taken together with allegations pertaining to the plaintiff's particular case, could plausibly allege sex discrimination under Title IX. *Id*. at 855.

Defendant similarly mischaracterizes the case law surrounding the "Dear Colleague" letter. Both *Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019), and *Columbia Coll. Chicago*, which Defendant cites, held that the "Dear Colleague" letter, like anti-male events, films, and social media posts by a Defendant, while not sufficient *on their own* to survive a motion to dismiss, can serve as relevant background information to a Title IX claim. *Purdue*, 928 F.3d at 668-69; *Columbia Coll. Chicago*, 933 F.3d at 855. Doe does

not offer them here his sole definitive proof of sex discrimination—rather, they are offered to provide the proper background establishing a general anti-male bias on the part of Defendant. *Id*. ¶¶ 128-150.These materials show that Defendant has endorsed and approved a general anti-male bias by identifying and portraying all men as potential sexual aggressors, and women as sexual victims. *Id*. ¶¶ 138-141. These materials promote an environment where any male accused of sexual misconduct against a female victim is presumed guilty.

This general bias, together with specific facts evincing gender bias in his case, are sufficient to properly state a claim for sex discrimination.

## VIII.   Breach of Contract Claim

Plaintiff concedes that his breach of contract claim as pled may be properly dismissed. Though the Complaint adequately pleads the elements of a breach of contract claim, and specifically that Defendant acted arbitrarily, capriciously, and in bad faith, Plaintiff recognizes that a breach of contract claim against Defendant is barred by sovereign immunity principles.

## IX.     Plaintiff Has Adequately Stated a Claim for Retaliation Under Title IX

NIU overstates the pleading standards required and the nature of Plaintiff's allegation relating to the claim. To establish a claim for retaliation under Title IX, a plaintiff must show that: (1) they engaged in a statutorily protected activity; (2) there was a materially adverse action taken against them; and (3) there is a causal connection between the adverse action and protected activity. *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017).

The bulk of Defendant's opposition to this cause of action relies on a narrow reading of *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167 (2005) when it should be broadly construed, especially in light of the Seventh Circuit's ruling in *Columbia Coll. Chicago*, 933 F.3d at 857. In *Jackson*, the Court held that a cause of action for retaliation existed under Title IX despite it not being in the statutory text. 544 U.S. 167, 178. It is thus not a leap to say that retaliation is intentional discrimination under Title IX. This is supported by the implementing regulations for Title IX.

> No recipient or other person may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by title IX or this part, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part. Intimidation, threats, coercion, or discrimination, including charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation.

34 CFR § 106.71(a). Thus, participating in a Title IX hearing, even by defending oneself, can constitute a protected activity under Title IX.

This reading of the regulations is supported by the Seventh Circuit's opinion in *Columbia Coll. Chicago*. The plaintiff in that case raised various causes of action, including retaliation on the basis that he had been defending himself at his Title IX hearing. *Columbia Coll.,* 933 F.3d. at 857. At the motion to dismiss stage, the district court dismissed his claim of Title IX retaliation asserting that no facts supported that he was suspended for a year because of his defense, but rather that it was the outcome of the proceeding based on evidence. *Id.*

In Doe's case here, on the other hand, there are clear indicia of retaliatory behavior. For example, NIU's failed to accommodate Doe's assertion of his Fifth Amendment rights,

and adopting his prior statement to the police when Doe declined to do so. Am. Compl. ¶ 60. NIU's drug use allegations are similar, providing little factual information in the initial notice , verbally stating new allegations after Doe provided evidence rebutting the charge, and not providing a resolution form consistent with policy. *Id*. ¶¶ 99, 111-114, 116, 122. The charges were eventually dismissed on the same day Plaintiff appealed his Title IX decision.

At least two district courts have found that defending oneself in a Title IX procedure can constitute a protected activity that can support a retaliation claim. In *Wilkerson v. Univ. of North Texas*, 223 F.Supp.3d 592 (E.D. Tex. 2016), the plaintiff, a non-tenured professor, engaged in a relationship with a 26-year-old woman who later enrolled in the university he taught at. *Id.* at 598-599. After the woman enrolled, she filed a sexual harassment claim against the plaintiff. *Id.* An investigation commenced and found him not responsible and that there was insufficient evidence to establish he violated the university's sexual harassment policy *Id.* Nevertheless, the plaintiff's contract was non-renewed based on false communications that he was in a supervisory role over the student. The plaintiff learned of the communication and attempted to submit evidence disproving it, but the dean denied him the opportunity to do so. *Id.* He then further appealed and his termination was ultimately upheld by the Vice President of Academic Affairs without disclosing the bases for his decision. *Id.* In evaluating these facts, the court found that the plaintiff had alleged a cause of action for retaliation because Title IX should be read broadly to protect the rights of all involved so as to provide all parties with the opportunity to appear before an impartial tribunal. *Id*. at 603.

This reasoning was also echoed in *Crowther v. Board of Regents of Univ. System of Georgia*, No. 1:21-CV-04000, 2023 WL 2524453 at *1 (N.D. Georgia, Mar. 15, 2023). In that case, the plaintiff was a long-time professor of art who used nude models in his classroom. He took a photograph of a model with her consent in order to assist a student in drawing a non-sensitive body part and blurred any sensitive body parts. *Id*. at *1. An anonymous individual sent a tip that he had been photographing nude models and inappropriately touched students. *Id.* at *2. The University refused to disclose the identity of the anonymous complainant, and the plaintiff was not given adequate time to respond despite requesting an extension and providing rebuttal information. *Id.* at *3-4. He was eventually found responsible and suspended for one semester, and his contract was not renewed. *Id.* at *4. Plaintiff appealed the finding of responsibility and the non-renewal of his contract, and his appeal was denied. *Id.* Prior to his contract's non-renewal, the University pressured him to resign while he was defending the Title IX charges. *Id.* at *9. The court found that defending oneself in a Title IX proceeding was protected activity, and pressuring the plaintiff to resign constituted an adverse employment action. *Id.*

This case is no different than the two above. While Plaintiff is a student in this case and the plaintiffs in *Wilkerson* and *Crowther* were professors, Plaintiff was provided less than proper detail about the charges against him for cocaine use and possession. *First Am. Compl.* ¶ 105. Plaintiff was able to rebut the allegations against him, and then learned of new allegations against him without being provided written notice or the opportunity to respond. *Id.* ¶¶ 111-114. Defendant dismissed the allegations of cocaine use and possession only after suspending Doe for multiple weeks that eventually resulted in his withdrawal from the University and only after the Title IX hearings and sanctions, on the same day

21

Doe filed his appeal. *Id.* ¶¶ 124-126. NIU wanted to punish Plaintiff, and when it became clear he would not do as they hoped and accept responsibility and instead defended himself, it developed a retaliatory investigation. While NIU claims Plaintiff was found responsible for a violation of being on campus despite not being permitted, that in no way justifies a suspension of multiple weeks and eventual withdrawal due to being unable to attend classes. *Id.* ¶¶ 123-124.

Moving to the next element, a suspension from school that would result in graduation delays and a tarnished academic record can be a materially adverse action. *Yap v. Northwestern Univ.*, 119 F.Supp.3d 841, 851-52 (N.D. Ill. 2015). As to the third element, NIU attempts to state that Plaintiff has not adequately alleged the but-for cause. To the contrary, Plaintiff has alleged sufficient reason to believe his defense was a but-for cause of the harm to him. There was scant factual detail in the first notice of drug use. The allegations were changed after he rebutted the original allegations, and he was provided no written notice of the new allegations. The ultimate decision dismissing the allegations was handed down shortly after his Title IX hearings were completed, on the day of his appeal, after Plaintiff withdrew from the school.

## X.   Plaintiff's Declaratory Judgment Action Is Not Barred Under The Eleventh Amendment

In order to understand the remedies Plaintiff may be entitled to, it is worth reviewing what is requested. Plaintiff requests: (i) the outcome and findings made by NIU's Title IX Final Report be reversed; (ii) the outcome and findings made by NIU at the Title IX sanctions hearing be reversed; (iii) the record of Plaintiff's suspension due to the unfounded cocaine use allegations be removed from his educational file; (iv) the record of

Plaintiff's expulsion from NIU due to the Title IX claim be permanently removed from his education file; (v) the record of Plaintiff's suspension due to the unfounded cocaine use allegations be destroyed; and (vi) the record of Plaintiff's expulsion due to the Title IX investigation and hearing by destroyed. *Id.* ¶ 245.

While NIU is correct that these actions have a retroactive component, they are not solely retroactive, NIU's findings result in ongoing harm to Plaintiff. The continuing harm has included a loss of earning potential, a tarnished reputation, loss of employment opportunities, and delayed education and graduation. It is not uncommon for plaintiffs to seek and for courts to grant injunctive relief relating to Title IX cases that cause continuing harm to Plaintiffs.

For example, in *Doe v. Purdue*, the plaintiff was permitted to seek injunctive relief expunging the finding of guilt from his record because of the continuing harm of the finding of guilt, potentially barring him from naval service. even though the plaintiff in that case did not specifically request it. 928 F.3d at 666-67. This decision was made based on a broad mandate of Federal Rule of Civil Procedure 54(c). More specifically, in *Doe v. Cummins*, 662 Fed. Appx. 437, 443-44 (6th Cir. 2016), the Sixth Circuit Court of Appeals considered this exact question and stated that declaratory and injunctive relief were not barred because the defendants requested that negative disciplinary explanations from their records be removed, because removal of a negative notation can be prospective relief. *Id,*

This is supported by Ninth Circuit case law as well. In *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007), the court held that the removal of negative notations is an appropriate basis for injunctive relief because it related to potential future harm. In *Crowther,* 2023 WL 2524453 at *9, the district court held the Board of Regents was not

immune to the plaintiff's seeking injunctive relief to reverse and expunge the Title IX findings and remove any mention of the investigation from his files because it was remedying future harm. It does not appear that injunctive relief is only available under the *Ex Parte Young* exception, or *Crowther,* as explained *supra,* the Northern District Court of Georgia found this type of relief could be sought against the University itself in addition to individual defendants. *Id.*

In the event that the relief sought by Plaintiff can only be achieved through the *Ex Parte Young* exception, Plaintiff seeks leave to amend his complaint to include the individual defendants from whom seeking relief would be appropriate under *Ex Parte Young.*

<u>**CONCLUSION**</u>

Plaintiff has been dealing with the fallout of a rushed, biased, and retaliatory investigation into a false sexual misconduct incident for the past seven years of his life. He has adequately alleged that NIU has wanted to punish him on the basis of his gender, does not treat women accused of misconduct in the same manner, retaliated against him for defending himself, and that he seeks appropriate relief.

Respectfully submitted,

/s/ Gal Pissetzky_____
Gal Pissetzky,
Attorney for Plaintiff
Pissetzky Law, LLC
35 E. Wacker Dr.
Suite 1908
Chicago, IL 60601
(312) 939-4155
gal@pissetzkylaw.com

## **CERTIFICATE OF SERVICE**

The undersigned, Gal Pissetzky, hereby certifies that in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, and the General Order on Electronic Case Filing (ECF), the

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

was served pursuant to the district court's ECF filers.

Respectfully submitted,

/s/ Gal Pissetzky_____
Gal Pissetzky